SPEISER and another, by guardian *ad litem,* Appellants, vs. PHŒNIX MUTUAL LIFE INSURANCE COMPANY, Respondent.

*October 22—November 17, 1903.*

*Life insurance: Evidence: Certified copies: Knowledge of falsity of statements by assured: Waiver of forfeiture.*

1. In an action upon a life insurance policy an officer of another company testified by deposition that the assured had applied to his company for insurance, and produced the original application and the accompanying declarations of the assured and the medical report thereon. He refused to part with such originals, and certified copies were attached to the deposition. *Held,* that such copies were admissible in evidence.

2. One who, though not a regular agent of an insurance company, solicited life insurance on its behalf, made application for a policy through a general agent of the company, and, when the policy was issued, delivered it to the assured, was, under sec. 1977, Stats. 1898, the agent of the company in procuring such insurance.

3. Knowledge by such an agent of the falsity of statements in the application of the assured which were therein warranted to be true, and delivery of the policy notwithstanding such knowledge, constituted a waiver of the forfeiture which would otherwise have resulted from such falsity, in the absence of any collusion between the agent and the assured or any one on behalf of the beneficiaries.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

It appears from the record, and is undisputed, that April 17, 1900, the defendant issued its policy of insurance on the life of Delia Speiser, of Milwaukee, for the amount of $3,000, payable to her minor children, the plaintiffs in this action; that August 19, 1900, the assured, Delia Speiser, died in Milwaukee; that August 31, 1900, notice and proofs of her death were given to and received by the defendant; that February 9, 1901, Morris Speiser was appointed guardian *ad litem* of the plaintiffs, and that March 4, 1901, this action was commenced to recover such insurance; and the complaint alleges the facts stated, and that the assured had performed all the conditions of the insurance contract on her part.

The defendant answered by way of admissions, denials, and counter allegations to the effect that in her application for such insurance the insured stated (1) that she did not then have any disease or disorder; (2) that during the past seven years she had no medical advice, except in respect to her confinement; (11) that she had never had difficulty in breathing, nor any disease of the heart, nor palpitation of the heart, nor dropsy, nor swelling of the feet or face; (12) that her mother died at the age of fifty-five by reason of change of life, which lasted two years, after previous good health; that she had one sister living in good health at the age of forty-four, and one who died at the age of forty-five of change of life, which continued for two years, after previous good health; that none of her uncles, aunts, or grandparents had any disease of the heart or kidneys; that she had never applied to the defendant, nor any other company or association, for any insurance which had not been granted, nor which had been delayed or modified in kind or rate. The answer fur-

ther alleges, in effect, that each and all of such answers were warranted in the application to be full, complete, and true, but that each and all were false and untrue to the knowledge of the assured; that October 21, 1899, she applied to the Home Life Insurance Company of New York for insurance, and the same was refused October 28, 1899; that at the time of the application of the assured to the defendant for the insurance in question she was afflicted with fatty degeneration of the heart, and knew of such disease, and had previously consulted several' physicians in relation thereto; that the mother of the assured died of dropsy; that her sister, mentioned, died of Bright's disease; that the living sister mentioned was in poor health, and suffered from diabetes; and that in issuing the policy the defendant relied upon the truthfulness of the statements contained in the application.

For a second defense the answer alleges, in effect, that by the contract of insurance the policy was not to take effect until the first premium should be paid to the defendant or its agent while the assured was in good health, and that when it was paid, August 17, 1900, the assured was suffering from organic disease of the heart, to her knowledge.

The third defense alleges, in effect, that by the contract of insurance the defendant was at liberty, in case any of such answers should be untrue, to cancel the policy as therein specifically set forth, upon repaying the cash premium paid, and that November 6, 1900, the defendant tendered back the premium of $99.66 paid, and demanded a cancellation of the policy, and that the same was deposited in court to make such tender good.

At the close of the trial the court directed a verdict in favor of the defendant, and from the judgment entered thereon accordingly the plaintiffs appeal.

For the appellants there was a brief by *Roemer & Aarons,* and oral argument by *C. L. Aarons*

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *George P. Miller.*

CASSODAY, C. J. In the deposition of the vice president of the Home Life Insurance Company of New York he testified to the effect that October 21, 1899, the assured made application to that company for insurance, and the witness produced the original application for $2,000 life insurance, signed by Delia Speiser, and the same was marked as an exhibit attached to the deposition; but, as the witness refused to allow such original to go out of the office, a certified copy was produced, and annexed to such deposition in place of the original. That company could not have been compelled to surrender its private papers. To prove the contents of such papers, therefore, secondary evidence was essential. The correctness of the copy is not questioned. Its admissibility, under the circumstances of this case, cannot be seriously doubted. *Bonner v. Home Ins. Co.* 13 Wis. 677; *Wis. River L. Co. v. Walker,* 48 Wis. 614, 4 N. W. 803; 1 Jones, Ev. § 217, and cases there cited. The same is true as to the admission of copies of Mrs. Speiser's declarations in making such application to the Home Life Insurance Company and the medical report thereon to that company. Her application was rejected October 28, 1899.

2. The important question in this case is whether the court was justified in directing a verdict in favor of the defendant. It appears from the testimony of the medical examiner that Mrs. Speiser's application was so rejected by the Home Life Insurance Company not on account of the condition of her heart at that time, but on account of albumen in the urine, indicating "disease of the kidneys." This shows that the statement in her application to the defendant for insurance to the effect that she had never applied to any other company or association for any insurance which had not been granted

was untrue. The question recurs whether there is evidence tending to prove that it was waived by issuing the policy in question. The testimony of the witness Heinemann tended to prove that during the latter part of 1899 he solicited Mrs. Speiser for life insurance; that he wrote her a policy in the Home Life; that he made the application through the agent at that time of the Home Life Insurance Company of New York; that he (the witness) was acting for that company at that time; that such agent arranged for that company's medical examiner to examine Mrs. Speiser; that such examination was made, and she was rejected by reason of albumen having been found in the urine; that, after she was so rejected by the Home Life Insurance Company, he saw Mr. and Mrs. Speiser again in the following spring, relative to the writing of life insurance on behalf of the defendant in this action; that he made application at that time through the defendant's general agent for a combined policy for both Mr. and Mrs. Speiser for the amount of $3,000; that they were examined by the medical examiner at that time; that Mr. Speiser was rejected, and laid over for one year, but that Mrs. Speiser was accepted, and a special policy was made to her; that he saw the policy when it was returned from the home office to the general agent; that he (the witness) looked over and examined the policy, and delivered it to Mrs. Speiser; that a copy of the application that had been made by her was in the policy; that he read the whole policy over, including the copy of the application, before he delivered the policy to Mrs. Speiser; that he had known Mrs. Speiser and her family for eighteen or twenty years prior to her death; that he did not know her mother personally, but did know her father and both of her brothers, and that he had been acquainted with her two sisters mentioned for eighteen or twenty years; that he heard several years before that one had Bright's disease, and the other, if he was not mistaken, had

some complication of the heart; that he had all the facts so stated by him in mind at the time he wrote the application and delivered the policy in question to Mrs. Speiser; that at the time the policy was written he did not know that Mrs. Speiser was herself suffering from any disease; that he knew that he had heard prior to that time that she had palpitation of the heart; that he knew at the time he delivered the policy to Mrs. Speiser of the facts stated relative to her health, but that he did not tell such facts to the general agent of the defendant, or to any officer or agent of the defendant, nor anything about the knowledge he had of her prior rejection by the Home Life Insurance Company; that the reason why he did not inform the general agent was that every agent of Milwaukee or any other city having a rejected client tries to put them in some other company if they can.

The statute declares that:

"Whoever solicits insurance on behalf of any insurance corporation . . . or transmits an application for or a policy of insurance, other than for himself, to or from any such corporation, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance corporation, . . . shall be held to be an agent of such corporation to all intents and purposes unless it can be shown that he receives no compensation for such services." Sec. 1977, Stats. 1898.

Heinemann, with the authority of the defendant, certainly performed several of the acts mentioned in this section of the statutes. We are unable to escape the conclusion that such testimony tended to prove that Mr. Heinemann was the agent of the defendant in procuring the insurance in question. The trial court seems to concede that he was "the agent or broker who solicited the insurance," but held that he "was not such an agent with knowledge of the condition of the deceased as to bind the company." Certainly, his testimony

tends to prove that he had full knowledge of the fact that
Mrs. Speiser's application for insurance in the Home Life
Insurance Company of New York had been rejected, and the
ground upon which it had been rejected.    There does not
seem to have been any evidence of any untruthful statements
contained in her application for insurance in the defendant
company which were unknown to Heinemann, or of which
he did not have full knowledge at the time such application
was made, and before the policy was delivered to Mrs.
Speiser.    Assuming that Heinemann had such knowledge,
and that he was the defendant's soliciting agent within the
meaning of the statute quoted, then we are called upon to
consider the legal effect of delivering the policy under such
circumstances.

It was held by this court long ago in an elaborate opinion
by DIXON, C. J., that:

"An agent of an insurance company, who is authorized to
take risks and issue policies for the company, may *waive* a
condition in the policy to the effect that any change in the
title or possession of the property insured shall render the
policy void.    Where the agent, with a full knowledge of the
fact that such a change of title or possession has occurred, re-
ceives a premium and issues a renewal receipt, this consti-
tutes a *waiver* of such condition."    *Miner v. Phœnix Ins. Co.*
27 Wis. 693.

That case has frequently received the sanction of this
court.    *Renier v. Dwelling House Ins. Co.* 74 Wis. 89, 94,
95, 42 N. W. 208, and cases there cited.    In this last case
it was contended that by the terms of the contract the solicit-
ing agent was never authorized to make contracts of insur-
ance nor to issue policies, but merely to receive applications
and forward them to the company.    But it was held, in effect,
that, as the local agent had performed the several acts men-
tioned in the statute quoted in behalf of the company and
with its authority, the latter could not disclaim his agency

in the doing of anything necessarily implied in the specific
acts thus authorized.   And it was there held that

"the local agent, under the authority given and the statute
cited, had the implied authority to waive any answers in the
application or stipulation in the policy as to the then con-
dition of the property or the existence of the mortgages, and
by accepting the premium and issuing the policy the com-
pany ratified such waiver and estopped itself from disclaim-
ing such agency."   74 Wis. 95, 42 N. W. 210.

Such ruling has been steadily adhered to.   *Schultz v. Cale-
donian Ins. Co.* 94 Wis. 43, 68 N. W. 414, and cases there
cited; *Johnston v. N. W. Live Stock Ins. Co.* 94 Wis. 121,
68 N. W. 868; *St. Clara Female Academy v. N. W. Nat.
Ins. Co.* 98 Wis. 263, 264, 73 N. W. 767.; *Hobkirk v. Phœnix
Ins. Co.* 102 Wis. 16, 78 N. W. 160, and cases there cited.

Counsel seek to escape the effect of the rule of law men-
tioned by contending, in effect, that Heinemann deliberately
perpetrated a fraud upon the defendant; that he conspired
with the assured to rob the defendant by fraudulently waiv-
ing the conditions contained in the contract.   He cites the
general rule of law "that notice to the agent is, in contem-
plation of law, notice to a principal" (1 Am. & Eng. Ency.
of Law, 2d ed. 1144), and then relies upon the exception that
the rule is not applicable "where the agent *colludes* with a
third party," since the rule is "for the protection of innocent
third persons, and not for those who use the agent to further
their own frauds upon the principal" (Id. 1146).   The same
principle is declared, in effect, by this court in a case cited
by the same counsel, wherein it is held that:

"A principal is not bound by the unauthorized and fraudu-
lent acts of an agent, done in pursuance of a corrupt con-
spiracy between such agent and the person who seeks to ob-
tain the benefit of the fraud.   Thus, where the agent of a
mutual aid association and the insured, both knowing of a
by-law forbidding the insurance of any person over fifty

years old, conspired together to procure the insurance by falsely representing that the insured was under fifty years, the association is not bound by the acts of the agent, and there is no waiver of the restriction in the by-law." *Hanf v. N. W. Mut. Aid Asso.* 76 Wis. 450, 45 N. W. 315.

The difficulty with the contention is that it does not appear from the undisputed evidence that there was *collusion* between Heinemann and the assured, or any one in behalf of the beneficiaries, to defraud the defendant, nor that there was a corrupt conspiracy between them to defraud the defendant. It simply appears that there were certain statements in the application which Heinemann knew to be untrue, but nevertheless, in behalf of the defendant, consented to issue the policy. It is substantially the same as in the numerous cases cited, and many others which might be cited, where the local agent agreed to issue the policy upon an application containing material statements which the agent knew at the time to be untrue. The question should have been submitted to the jury.

3. One defense seemingly relied upon is that the policy was not to take effect until the first premium should be paid while the assured should be in good health, and that it was not paid until August 17, 1900, two days before the death of the assured, and when she was not in good health, but was, to her knowledge, suffering from organic disease of the heart. It is enough to say that it appears from the record that the first premium was paid at the time the policy was issued, April 17, 1900, and a receipt to that effect, signed by the secretary of the defendant, is in the record. What has been said obviates the necessity of considering any of the other questions suggested by the appellants.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.