The pleadings herein are quite voluminous. They may be summarized briefly as follows:
The plaintiff alleged the following facts: He is the administrator of the estate of Helen Winifred Luce, deceased. Defendant is a life insurance company, organized under the laws of the state of Nebraska, authorized to and transacting business in Iowa. On August 27, 1937, defendant issued and delivered to decedent a policy insuring her life in the amount of $1,000 with her mother, intervener herein, named as beneficiary. At the time of the delivery of the policy, advance premium for three months was paid to defendant. On October 20, 1937, decedent died. Proofs of her death were furnished to the defendant. Plaintiff was unable to set out copies of the proof of death or copy of the policy because the same were in the possession of the defendant. The interests of the beneficiary were assigned to plaintiff by written assignment, copy of which is set out. Defendant paid $500 on the claim. Recovery was sought for the balance of $500 with interest and costs.
The answer of the defendant consisted of a general denial of all allegations not specifically admitted. The answer specifically denied that plaintiff had any right to recover under the policy, either as beneficiary or assignee. The answer further alleged the following facts: The pretended assignment to plaintiff was void because, at the time the assignment was attempted, the beneficiary had no right, title or interest in the policy or proceeds thereof or any claim arising thereunder for the reason that a controversy existed between the beneficiary and the defendant whether the policy was ever in force, and it was agreed by the beneficiary and the defendant that such a controversy did exist and was genuine, and the parties agreed to and did settle all differences in consideration of the sum of $500 paid to the beneficiary by the defendant, and the beneficiary released and discharged defendant from all claims under the policy and surrendered the policy to the defendant. Copy of the release is set out. Defendant further alleged that the beneficiary at no time disavowed the settlement and satisfaction, nor did she tender or offer to repay the defendant the amount paid thereunder. Defendant prayed that the petition be dismissed with costs. Defendant tendered the sum of $5.71, *Page 535 
as the premium paid on the policy, and the sum of $12.25
representing the costs accrued to the date of the tender.
Plaintiff's reply to the answer stated that the settlement was without consideration and not binding upon the beneficiary because no good faith controversy existed between the parties. Also, that the settlement was procured by fraud and undue influence, defendant threatening to prosecute the beneficiary in criminal proceedings unless the settlement were made; that the beneficiary, at the time, was sick and in a weakened condition, and the attorney for defendant overpowered her and induced her to sign a release which was in fact void.
After the jury was impaneled, but before evidence was introduced, the beneficiary named in the policy filed a petition of intervention, which alleged the issuance of the policy on August 21, 1937, the payment of three months' premium, the fact that she was named as beneficiary under the policy, the amount being $1,000, the death of the decedent on October 20, 1937, the furnishing of proofs of death, the payment of $500, and concluded with a prayer for the balance of $500 with interest and costs.
To the petition of intervention defendant filed answer setting forth the same facts alleged in its answer to the petition of plaintiff. In replying to such answer, the intervener attacked the settlement on substantially the same grounds stated in the plaintiff's reply.
The intervener is the wife of the plaintiff and was represented by the same attorneys that represented the plaintiff. The trial proceeded and evidence was introduced jointly by the plaintiff and intervener. They introduced the policy in evidence, the same being a policy of life insurance on the life of the decedent, whose age at the time of the issuance of the policy was 17 years. The amount of the policy is $1,000 and is payable at age 85, or upon the death of the insured. The premium provided for was $5.59 in advance, quarterly, during the lifetime of the assured until premiums for 68 years should be paid. The date of the policy is August 21, 1937. Among the conditions included in the policy is the following, "This policy shall not become effective until the first premium upon it is paid during the good health of the assured." It also provided:
"I agree that insurance hereunder shall become effective *Page 536 
as of the date of the issuance of the policy provided issuance and delivery thereof shall first have been authorized and delivery shall have been made to me or for me to someone not connected with the Company and not a solicitor of insurance, and provided further that the first _____ annual premium shall have been paid to the Company in cash and delivery of the policy shallhave been made as above during my lifetime and while I am in goodhealth."
Among the statements contained in the application for the policy which was attached to it were the statements that the applicant was not pregnant, had had no miscarriages, and that her menstrual functions were regular.
Plaintiff and intervener jointly introduced in evidence proofs of death, which showed that the deceased died October 20, 1937, at Osceola, Iowa, of peritonitis. The statement of the physician, as to contributing cause of death was "septic abortion (history) prior to September 21, 1937." The statement also was made that the deceased was first sick September 20, 1937, and was treated in a hospital from September 21 to October 1, and from October 10 to October 20, 1937, at the Osceola Hospital. In making proofs of loss, the beneficiary agreed that "the written statements and affidavits of all the physicians who attended or treated the insured * * * shall constitute * * * a part of the proofs of death and * * * all provisions of law forbidding any physician or other person who attended the deceased from disclosing any knowledge or information acquired by him, are hereby waived and such physician is hereby authorized to make such disclosure."
The plaintiff testified, both for himself and the intervener, as to his capacity as administrator, the death of the deceased, her age at time of death, that the policy was delivered to the deceased at their home by one Harry Shields, soliciting agent, who took the application for the defendant, that the delivery was made on August 23, 1937, at which time deceased paid $5.59 in cash, and from that time on the beneficiary had the policy. On cross-examination, he testified that they had a policy on their son. He thought this policy was delivered July 13, 1937. He was sure that the boy's policy was received prior to the time the policy of the decedent was received. Defendant then undertook to identify, for the purpose of introduction in *Page 537 
the evidence, a written receipt signed by the son and the intervener, witnessed by the said Shields, reciting that the boy's policy was delivered September 14, 1937. Plaintiff and intervener objected to the identification of the exhibit, because it was incompetent, irrelevant and immaterial and not cross-examination. The objection was sustained.
Plaintiff and intervener rested without introducing any evidence of an assignment from the intervener to the plaintiff so that, at the time they rested, the evidence was undisputed that, if either of them was entitled to recover, it was the intervener and not the plaintiff. This defect in the evidence was not corrected at any time in the subsequent proceedings.
One Jack Morer testified that he represented the defendant in making the settlement. He identified the release relied upon, and testified that he signed it on behalf of the defendant, intervener signed it as beneficiary thereunder and it was witnessed by the plaintiff. This release recites among other things that:
"WHEREAS, there is a genuine controversy now existing by and between the parties and it is the desire and the intention of the parties to fully settle any and all such differences, and to that end and for that purpose it is agreed as follows:
"1. That for and in consideration of the sum of Five Hundred ....... ($500.00) ....... DOLLARS in hand paid to the said Blanche Arlene Luce, by The Service Life Insurance Company of Omaha, Nebraska, and receipt of which sum is acknowledged by the said Blanche Arlene Luce, the said Blanche Arlene Luce does by these presents and for her heirs, executors, administrators and assigns forever release and discharge The Service Life Insurance Company of Omaha, Nebraska, its successors and assigns, and each of them from all claims and demands, action and causes of action or suits at law or in equity of whatsoever kind and nature now accrued or hereafter to accrue, whether known or unknown, under and by virtue of the issuance of said Policy of Insurance Number 18019 to Helen Winifred Luce, and in which Policy the said Blanche Arlene Luce is named beneficiary, and the said Blanche Arlene Luce does by these presents acknowledge full settlement and satisfaction of any and all claims or demands of every nature and character which she may have against The Service Life Insurance Company of *Page 538 
Omaha, Nebraska, as beneficiary under said Policy of Insurance No. 18019 issued to Helen Winifred Luce, and in which the said Blanche Arlene Luce is named as beneficiary therein, said policy is herewith delivered to The Service Life Insurance Company (B.A.L.).
"2. It is understood that payment of the above set out consideration herein recited is not an admission of any liability by The Service Life Insurance Company of Omaha, Nebraska, but that said Company expressly denies liability."
Morer testified that the amount called for had been paid and the exhibit was offered in evidence. Objection was interposed on the ground that there was no evidence to show that there was any controversy to settle. The objection was sustained.
Defendant then proceeded to introduce evidence to the effect that the controversy was whether or not, at the time the policy was delivered, the condition of the assured's health was the same as of the date of the application. As showing the date of the delivery, defendant identified and introduced in evidence the written receipt for delivery of the policy which is dated October 11, 1937, is signed by the decedent, as applicant, and the intervener, as beneficiary, and was witnessed by the soliciting agent, Shields. In describing the controversy, Morer testified:
"I told Mrs. Luce that I came to discuss with her the matter of the policy of insurance that had been issued by the Service Life Insurance Company upon the life of her daughter, and that our investigation revealed that since the time of the making of the application by her daughter and the time that the policy was delivered, her daughter's health * * * had materially changed and that under those conditions it was our opinion that the policy wasn't delivered while her daughter was in good health as required by the terms of the application. That therefore there was no liability on the part of the company, that the company's attitude was that it wasn't required to pay her anything under the policy due to this change in condition between the date of the application and the date of the delivery of the policy.
"Mr. Luce was present during all of my conversation. *Page 539 
* * * Mrs. Luce said to me that she was under the impression that she was entitled to the full amount of the policy which was a thousand dollars. I told her it was the opinion of the company and my opinion as their counsel handling this matter that there was absolutely no liability at all, but that the company, if she saw fit, desired to eliminate any possible litigation, and that if she was interested in disposing of the matter amicably by virtue of settlement, I was authorized to do so."
Morer was told by Mrs. Luce that she owed Dr. Stroy and Dr. Sells some money in connection with medical services and she asked Morer to see whether the doctors would be willing to reduce the amount of their bills if settlement was made, in view of the fact that the doctors had assignments to the extent of their claims on file with the company. Morer contacted Dr. Stroy, who also went to the Luce home. Mr. Luce also desired to talk with Shields, the agent. Finally Mrs. Luce asked how much the company would be willing to pay in settlement and was told that Morer was authorized to pay $500 in settlement. He then went back to his hotel to wait while Mr. Luce contacted Shields, the agent. Thereafter, Mr. Luce and Shields came to the hotel and Luce told Morer that Mrs. Luce was willing to accept the $500 and the doctors would reduce their bills. Morer returned to the Luce home that evening, asked Mrs. Luce if she was willing to accept the $500 and she said she was.
In describing the consummation of the settlement, the witness testified:
"So I then took exhibit `2' which is the settlement and I wrote in the amount of $500.00. I had the policy in my possession and I told her that in connection with the settlement she would have to surrender the policy and I wrote into the settlement these words: `Said policy is herewith delivered to the Service Life Insurance Company,' and I asked her to put her initials along side of those words, which she did, `B.A.L.' I executed the instrument on behalf of the Service Life Insurance Company. She signed it and Mr. Luce, her husband, witnessed it."
Dr. Sells agreed to accept $70 and Dr. Stroy $90. An assignment was prepared and executed by Mrs. Luce and witnessed *Page 540 
by Mr. Luce assigning said sums from the proceeds of the $500 settlement. The doctors were paid their respective amounts and executed written receipts therefor. The balance of $340 was paid to Mrs. Luce, who executed a written receipt therefor, which was witnessed by Mr. Luce.
Defendant re-offered Exhibit 2, the release. Plaintiff and intervener renewed their objection. The court's ruling was reserved.
Morer also identified as Exhibit 4, a certified copy of the death certificate signed by Dr. Stroy, which certified to the death of decedent on October 20, 1937, as having been caused by peritonitis and multiple abscesses, the date of the onset being September 20th, contributing cause, a septic abortion of September 10th. When first offered, this exhibit was excluded, but later it was admitted. Morer testified that he showed this exhibit to Mrs. Luce, his testimony being as follows:
"When I showed Mr. Luce this Exhibit `4,' being the certificate issued by the Department of Health of the State of Iowa, Mrs. Luce asked to see it and I handed it to her, and in connection with that, I said to her, `You can readily see the position of the company from that statement taken in connection with the proof of loss,' Exhibit `1' that she could readily see the position of the company in which the company claimed that the condition of her daughter's health at the time of the delivery of the policy wasn't the same as of the time of the application, and she said to me, `Yes, I think I can understand that.'"
D.S. Fairchild was also called as a witness for the defendant. He testified that he is assistant secretary of the company, and is familiar with the underwriting practices of the company. Objection was made to his testimony as being incompetent, irrelevant, immaterial, hearsay, self-serving, and not binding on either the plaintiff or the intervener. This objection was sustained. Defendant then offered to prove that it was the company's requirement that a policy must be delivered and paid for or returned within 30 days from its issuance unless the agent gets additional time. It was also the custom of defendant, that when a policy is delivered, the policy holder execute a receipt similar to Exhibit 3. The same objection was made to the offer of proof and was sustained. *Page 541 
Defendant also undertook to show that an inquiry was forwarded to the aforesaid agent, Shields, on September 20, 1937, asking the return of the policy here sued upon. The request was returned by the agent with a written endorsement that he had seen the deceased, who had promised to settle for the policy in about two weeks, and he asked for the allowance of additional time. This offer of proof was objected to for the same reasons and the objection sustained.
The witness Fairchild was permitted to testify that Exhibit 3 was received October 14, 1937, along with a remittance of the first premium; that it was the only receipt ever received in connection with the delivery of the policy, and that, prior to that time, the company had received no information from any source indicating that the policy was delivered prior to October 11, 1937, had had no notice of any delivery of the policy when Exhibit 11 was written on September 20, 1937, and the documents on hand at the home office were considered relative to the obtaining of settlement in this case.
Defendant produced, as a witness in its behalf, one Mabel Edwards, who testified that she was head nurse at the Osceola Hospital, her duties were mostly supervision, that she worked for Dr. Sells and Dr. Stroy in the hospital. On cross-examination, preliminary to objection, she testified that whatever information she received in regard to the decedent she got there in her professional capacity. Defendant sought to inquire concerning the illness of the decedent while in the hospital in September and October, 1937. Plaintiff and intervener objected on the grounds that the testimony was privileged. This objection was sustained. An offer of proof was made concerning the testimony. The same objection was made and was sustained.
Defendant called the intervener, Mrs. Luce, to the stand. She testified that their son's policy, previously referred to by plaintiff, was delivered before the policy of the daughter. She admitted signing Exhibit 1, the receipt for the boy's policy. The exhibit was again offered in evidence. The record is not clear what action the court took, but apparently the parties considered that the court adhered to its prior ruling in excluding it.
On cross-examination, Mrs. Luce testified that the boy's policy was delivered on July 11, 1937, and that the date September *Page 542 
14, 1937, on Exhibit 1, was not correct. She also testified that the policy sued on was delivered August 23, 1937, and that the date on Exhibit 3, October 11, 1937, was not correct. She further testified that Mr. Shields brought the policy to their home on August 21, 1937, she did not have the money to pay for it on that day, and Shields returned with it the following Monday, August 23, 1937, when it was delivered and the premium of $5.59 paid. In the course of this witness's testimony, she did not dispute the circumstances under which the settlement was made by Mr. Morer, hereinbefore reviewed. After Mrs. Luce had testified, the release, Exhibit 2, was received in evidence.
Neither the intervener nor plaintiff introduced any evidence in rebuttal. At the close of all the evidence, the plaintiff and intervener made a joint motion for a directed verdict, stating that it was immaterial to them whether the recovery be in favor of the plaintiff or the intervener, and that they jointly ask simply for one recovery. Grounds of their motion were that the policy in suit was issued by the defendant on August 21, 1937, and, as shown by the undisputed evidence, the policy was delivered on August 23, 1937, when the first quarterly premium was then paid, no issue was made by the defendant that the policy was procured through fraud or deceit, and the policy became an absolute and liquidated demand on the death of the decedent to the extent of $1,000, to which the defendant had no defense; that the later act of the defendant in attempting to settle the claim for $500 was without any consideration, not binding on either the intervener or the plaintiff, and all that defendant could claim because of said settlement was a credit of $500 on the claim; that defendant has no defense to the payment of the balance of $500, with interest from November 12, 1937, and, if the matter was submitted to the jury, and the jury returned a verdict for the defendant, the plaintiff and intervener would have the right to have the same set aside because not supported by the evidence.
Defendant's motion for a directed verdict was on the grounds that the plaintiff and intervener had wholly failed to sustain the burden of proof required of them by law; that the evidence presents no issue of fact to be presented to the jury; that plaintiff and intervener have failed to make a prima *Page 543 
facie case; that the evidence shows that there was at the time of the settlement a controversy existing as to the liability of the defendant company; that a settlement of said controversy was made and a release executed, admitting that a bona fide controversy existed at that time, the amount agreed upon and specified in the settlement was paid and the settlement was binding upon the beneficiary and also upon the plaintiff until set aside upon the grounds of fraud or the lack of consideration, the burden being upon plaintiff and intervener to prove such fraud or lack of consideration, which burden they had not sustained, there being no evidence thereon; that if a verdict were returned for plaintiff or intervener by the jury, it would be the duty of the court to set the same aside.
The court held that, if there was a good faith controversy, defendant would be protected and the settlement would stand, but that the record was so devoid of anything that would support defendant's contention that there was an honest dispute as to the validity of the policy, the court could do nothing but direct a verdict in favor of the intervener. Such a verdict was directed and judgment entered against defendant for $500, interest and costs. From this judgment, defendant appeals to this court.
[1] I. At the outset, we are faced with a motion to dismiss, which is based upon the assertion that, the notice of appeal having been served only on the intervener and her attorneys, it was fatally defective in that it was not addressed to nor served upon the plaintiff. Section 12837 requires that the notice of appeal be served upon the adverse party. In the case of In re Assignment of Lounsberry, 208 Iowa 596, 226 N.W. 140, at page 603, 226 N.W. 140, 144, we state:
"But in this jurisdiction, by force of statute, notice of appeal must be served `on the adverse party.' Section 12837. Any party who would be prejudiced by a reversal is an adverse party, upon whom notice must be served, or the court will be without jurisdiction. State Sav. Bank v. Guaranty Abst. Co., 181 Iowa 1378; Taylor v. Woodburn Bank, 198 Iowa 772; Hafer v. Medford 
C.L.R. Co., 60 Or. 354 (117 P. 1122, 119 P. 337)."
It is necessary, therefore, to ascertain whether or not the *Page 544 
plaintiff would be adversely affected in the event of a reversal. As above pointed out, the plaintiff sued as assignee of the proceeds of the insurance policy. No evidence was introduced to support the claim of such an assignment The plaintiff, acting jointly with his wife, the intervener, introduced evidence to show that, if any one was entitled to recover, it was the intervener and not the plaintiff. The petition was dismissed, when judgment was entered in favor of the intervener against the defendant. Plaintiff has not appealed. The adjudication is final as to him. A reversal could not adversely affect the plaintiff, except for the possibility that a different taxation of costs might be made.
Appellees contend that the plaintiff's interest in the taxation of costs is sufficient to constitute him a party entitled to service of notice of appeal. There is no merit in this contention. This court has repeatedly held that it will not entertain jurisdiction on appeal where the only matter involved is the taxation of costs. Welton v. Iowa St. Hy. Comm., 208 Iowa 1401,1404, 227 N.W. 332. Applying the rule of such cases to the record herein, we hold that the mere possibility of the plaintiff being interested in the taxation of costs did not constitute such an interest as shall deprive this court of jurisdiction because of the failure to address the notice of appeal to him when it was served upon the attorneys who represented him jointly with the intervener. The motion to dismiss is overruled.
[2] II. Appellants first and fifth assignments of error complain of the exclusion of Exhibit 1, the receipt for delivery of the boy's policy. This exhibit should have been admitted. Both Mr. and Mrs. Luce testified that the boy's policy was delivered before the policy here sued upon was delivered. Exhibit 1 showed the delivery of the boy's policy on September 14, 1937. The exhibit was proper to contradict the testimony of the plaintiff and intervener that the girl's policy was delivered August 23, 1937. Luin v. Chicago Grill Co., 138 Iowa 268, 270,115 N.W. 1024.
[3] III. Appellant's second and seventh assignments of error complain of the ruling of the trial court, in requiring appellant to prove the existence of a controversy as consideration for the settlement, before the court would permit the introduction *Page 545 
in evidence of the release, Exhibit 2. The ruling of the court was clearly erroneous. This is shown by our decision in the case of Vande Stouwe v. Bankers Life Co., 218 Iowa 1182, at page 1187,254 N.W. 790, 793, wherein we state, as follows:
"Before proceeding further with the discussion, it may be well to determine where the burden of proof rested, in establishing the execution of the settlement and in avoiding its consequences. The burden of proving that the release was executed rested upon the insurance company. It was under this burden of proof from the beginning to the end of the case. Barber v. Maden, 126 Iowa 402,102 N.W. 120. But when the execution of the release was once established, the burden was on plaintiff to establish that the release was invalid on account of fraud perpetrated on the insured at the time the release was executed. In Coffman v. Brenton, 214 Iowa 185, 239 N.W. 9, Mr. Justice Faville, speaking for the court, said:
"`The settlement having been made, the payment received by appellant, and the written instrument executed by him, the burden of proof rested on the appellant to impeach the transaction by proof of fraud.'
"Likewise plaintiff had the burden to establish that the demand of the insurance company which was compromised and released at the time of the execution of the release was totally unfounded."
Pursuant to the above pronouncement by this court, the burden of proof, which rested upon appellant, was to prove that the release was executed. However, upon proof of the execution and delivery of the release and payment of the amount due thereunder, the burden was on the intervener to sustain the allegations contained in her reply, to the effect that the release was invalid because of failure of consideration or fraud. The ruling of the trial court placed upon appellant a burden which it should not have been required to sustain.
[4] IV. Appellant's third and fourth assignments of error complain of the ruling of the court in refusing to permit the witness Fairchild to testify concerning the underwriting practices of appellant and in excluding from evidence the letter, Exhibit 11, written by appellant to the aforesaid agent, Shields, upon which Shields' reply was endorsed. This testimony and *Page 546 
this exhibit should have been admitted. They constituted competent evidence to show that the company honestly believed that it had a defense to the policy and explained why the company had the right to rely upon the date, October 11, 1937, appearing upon the receipt for the policy, Exhibit 3, as being the correct date of the actual delivery of the policy and payment of the premium. The record shows that on October 11, 1937, the insured was not in good health, but was confined in a hospital. If Exhibit 3 correctly states the date of delivery of the policy and the payment of the premium, then, under the terms of the application hereinbefore set out, the company had a good defense to the policy. The evidence was competent to support appellant's claim that a good faith controversy in fact existed.
[5] V. Appellant's sixth assignment of error complains of the ruling of the trial court in holding that the testimony of the nurse, Mabel Edwards, was privileged. The ruling of the court was based upon the provisions of section 11263 of the Code. The last sentence of this section reads as follows:
"Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."
The proofs of loss, signed by Mrs. Luce, contained an express waiver of the privilege of "any physician or other person who attended deceased, from disclosing any knowledge or information acquired by him." The testimony of the nurse was within the scope of such waiver. The objection to the testimony should have been overruled. Appellee relies upon our holding in the case of Pride v. Inter-State B.M.A. Assn., 207 Iowa 167, 175, 216 N.W. 62, A.L.R. 31. However, in that case, we recognized that a waiver could be made, such as the one here relied upon. Our holding there was that the waiver contained in the policy did not apply to the testimony to which objection was interposed, because the waiver was limited to a physician or surgeon who had been consulted previously, whereas the testimony was in reference to one who was consulted subsequent to the waiver. The case is not in point.
VI. Appellant's eighth and ninth assignments of error complain of the trial court's overruling appellant's motion for a directed verdict and sustaining the motion of intervener. *Page 547 
In view of the position taken by us regarding the burden of proof, the situation upon another trial of the case will not be the same as that which confronted the court herein. The decision of the court was based primarily upon the holding that appellant had failed to sustain the burden upon an issue which, under the law, the intervener should have undertaken to sustain. In view of this fact, we do not undertake to discuss or decide what ruling the court should have made upon such motions.
The errors of the court herein were clearly prejudicial to appellant. The judgment is reversed and the cause remanded for further proceedings in harmony with this opinion. — Reversed.
OLIVER, C.J., and SAGER, HALE, HAMILTON, MITCHELL, STIGER, and BLISS, JJ., concur.