NELLYE PEARL NOBLE, Appellee, v. UNITED BENEFIT LIFE INSURANCE COMPANY, Appellant.

No. 45398.

472

May 13, 1941.

Modified and Rehearing Denied September 19, 1941.

Breese & Cornwell, for appellant.

H. R. Duncan, for appellee.

MITCHELL, J.—On August 26, 1936, Frank Fritcher Noble made a written application to the United Benefit Life Insurance Company for a $1,000 insurance policy. The application was secured by a Mr. H. C. Roberts, who was a soliciting agent for the insurance company. The application called for the issuance of a non-medical policy and certain questions were asked as to the health of the applicant.

It is uncontradicted that Mr. Noble told Mr. Roberts at the time the application was made out, that he was not feeling well and had been treated by doctors in July and August of that year. Mr. Roberts told him that the policy was non-medical and that that made no difference. The agent made out the application. Questions 16 and 22, and the answers were as follows:

"16. Are you now in good health? Yes.

"22. · Name below all causes for which you have consulted a physician in the last ten years. None."

Mr. Roberts then told Mr. Noble to sign the application, which he did, without reading or knowing of the answers to the above questions.

Upon this application the insurance company issued the policy sued upon, and received payment of the premium.

The record shows that Mr. Noble had consulted the local physician in McIntire, Iowa, several times during July and August, 1936, but continued to work during that period. On November 16, 1936, Mr. Noble went to Joplin, Missouri and consulted a physician who advised him that he was suffering from tuberculosis of the throat. He was confined to the hospital and died on March 8, 1937.

Following his death, his wife, beneficiary in the insurance policy, filed proofs of death as required. The insurance company on April 21, 1937, denied liability in a letter which is as follows:

"April 21, 1937.

Mrs. Nellye P. Noble,
McIntire, Iowa.
Dear Mrs. Noble:
     Re: Policy C-154177
          Frank F. Noble.

We have received the proofs which you have filed in connection with the death of your husband, and have now completed our investigation.

We find that the disease which caused his death was one that predated the issuance of our policy. Consequently, it follows that in applying for the policy, the correct information was not given to us.

We issued this policy in reliance upon Mr. Noble's statement regarding his state of health, his previous medical attention, and had we known that these were incorrect, we would not have issued the policy. We are, therefore, exercising our right to rescind the contract because of these misrepresentations, and are enclosing remittance in the amount of $21.44 in refund of the premiums which have been paid by Mr. Noble upon this contract, and are showing that the contract was declared void by us as of date of issue.

Regretting that we could not be of any other service in this matter, we are

Yours sincerely,
UNITED BENEFIT LIFE INSURANCE COMPANY,
Philip E. Horan, Claim Department."

Enclosed with the letter was a check for $21.44, payable to Mrs. Noble, which she later cashed. Mrs. Noble commenced this action at law, against the insurance company to recover the sum of $1,000, the amount she claimed due under the terms of the insurance policy. The defenses were, that the insured was not in good health at the time of issuing the policy; that false representations were made by the insured in applying for the policy; and that there had been a mutual rescission and cancellation of the policy. There was a trial to a jury, which returned a verdict as prayed, and the insurance company being dissatisfied has appealed.

It is argued that the lower court erred in sustaining

the exceptions and objections of the appellee to interrogations 17–34 of the deposition of Dr. W. B. Chapman. In these answers the witness stated that he treated and examined the assured, Frank Fritcher Noble and that he was suffering from tuberculous laryngitis; that the disease was well advanced in October, 1936, and that in October, 1936, Noble had been afflicted with the disease for some months. Appellee's objection was that the matter sought to be elicited was a privileged communication under section 11263 of the Code and that the witness was incompetent, which objection was sustained by the court.

Appellant contends that the following statement contained in the application signed by the assured, constituted such a waiver that a doctor could reveal privileged communications of the assured in a court of law.

We quote from the policy:

"I hereby authorize any physician or other person who has or may attend me to disclose to said insurance company any information thus acquired.

"Dated at McIntire, Iowa, this 26th day of August, 1936.
Frank Fritcher Noble."

The material part of Code section 11263 of the 1939 Code of Iowa, is as follows:

"No * * * physician * * * who obtains such information by reason of his employment * * * shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

The above cited statute relating to privileged communication does not prohibit a physician from disclosing any confidential communications. It prohibits him from giving testimony.

The question of what constitutes a waiver by a patient has been discussed by this court on many occasions.

In Pride v. Interstate, 207 Iowa 167, 174, 216 N. W. 62, 65, 62 A. L. R. 31, this court said:

"All our previous cases take a broad ground upon this subject, and construe the statute liberally, to the protection of the confidence reposed by a patient in his physician * * * the appellant is not entitled to enlarge by interpretation the policy which was formulated by itself."

In Moutzoukos v. Mutual Benefit Health & Accident, 69 Utah 309, 321, 254 P. 1005, 1010, the waiver was as follows: " 'Do you agree that any physician who has ever treated you may give information within his knowledge as to your past or present physical condition?' " The answer was " 'Yes' ". The court held this did not permit a physician to testify in court and stated:

"The plaintiff's willingness to allow any physician that had ever treated him to give information within his knowledge as to plaintiff's past or present physical condition should not be construed as a consent that said physicians might testify to such information against the plaintiff in an action to recover on the policy. Such an interpretation of the language used would violate the rule that doubtful provisions should be construed in favor of the insured."

The policy was drafted by the appellant company and under well known principles of law any doubtful provision in the contract should be strictly construed against the company. A reading of the policy and application indicates the purpose of the statement in question was to permit the insurance company to question doctors of assured relative to his health before assuming the risk. The policy states:

"This policy and the application therefor, taken together, constitute the entire contract between the parties hereto."

The application stated in part as follows:

"If said premium is paid in full to the said Company's agent at the time of making this application and if said Company shall be satisfied as to my insurability on the plan applied for herein on the date of supplementary application therefor, then the insurance (subject to the provisions of the policy ap-

plied for) shall be effective from the date of said supplementary application."

In the case of Burgess v. Sims Drug Co., 114 Iowa 275, 282, 86 N. W. 307, 309, 54 L. R. A. 364, 89 Am. St. Rep. 359, this court said:

"Our statute relates to the giving of testimony, not to the publication in general of the privileged matter, and it seems to us clear that any waiver resulting from the giving or introduction of testimony on a trial should be limited to that trial. * * * In a later New York case a different conclusion was reached * * * but we do not agree to the reasoning in that case, which would seem to lead to the result that, if the privileged communication is in any way made public by the patient, the privilege is waived for all time, whereas we understand to be well settled that a communication to a third person by the patient or client will not be a waiver of the right to insist on the privilege when it is sought to have the disclosure made by the way of testimony in open court. Thus, it has been held that a waiver of the privilege as to one witness, by permitting him to testify as to the privileged matter, will not be a waiver of objection to the testimony of another witness as to the same matter. Mellor v. Railway Co., 105 Mo. 455 (16 S. W. Rep. 849). See, also, Dotton v. Albion Common Council, 57 Mich. 575 (24 N. W. Rep. 786), cited in McConnel v. City of Osage, 80 Iowa, 293, 301."

So in the instant case the consent of assured that his doctor reveal his condition to the insurance company does not in any way refer to the statute granting the privilege because the statute relates only to giving of testimony. Therefore the statute is not waived either directly or by implication.

Appellant relies to a great extent upon the case of Luce v. Service Insurance Company, 227 Iowa 532, 288 N. W. 681, but the waiver in that case states, we quote from 227 Iowa, page 536, 288 N. W., page 683:

" 'all provisions of law forbidding any physician or other person who attended the deceased from disclosing any knowledge or information acquired by him, are hereby waived and such physician is hereby authorized to make such disclosure.' "

Section 11263 is a provision of law. It prohibits giving testimony. Therefore the waiver in the Luce case expressly authorized the doctor to testify by waiving the statute. The ethics of the medical profession prohibit a doctor from disclosing or telling to anyone a confidential communication of his patient but this statute does not. It simply prohibits his giving testimony.

An analysis of the statute and the cases thereon both in Iowa and other jurisdictions clearly indicates that the purpose of the statute is to prohibit the giving of testimony in a court or some proceeding where the witness is under oath. In other words, there is a distinction between the disclosure of a fact and the testifying to a fact. Clearly the doctor's statement to the insurance company was not testimony. The doctor had the legal right to make this disclosure without the consent of the assured. The consent simply released him from his ethical obligation to tell no one.

The lower court was right in refusing to permit the doctor to testify.

■■■ Appellant argues that in giving Instruction No. 6, the court erred. We quote the material part.

"You are instructed that the defendant has plead an accord and satisfaction and claims that the plaintiff beneficiary has settled her claims upon this policy by indorsing and cashing the check for $21.44 (Exhibit No. '2' in evidence) inclosed with the letter (Exhibit 'D' in evidence). You are instructed that the plaintiff has the burden of establishing by a preponderance or greater weight of the evidence that there was no accord and satisfaction. The burden is upon the plaintiff to establish by the greater weight or preponderance of the evidence that the defendant had no valid defense to plaintiff's claim on this policy and knew this at the time it wrote the letter (Exhibit 'D' in evidence) and sent the check Exhibit No. '2' in evidence and if you find that she has so proven by the greater weight or preponderance of the evidence, then you must find that there was no accord and satisfaction."

This instruction told the jury that the appellee must prove there was not a good faith controversy or bona fide dispute.

For if the insurance company knew that it did not have a valid defense how could it in good faith dispute or refuse to pay the claim.

Appellant itself states the question as follows: ''The question is * * * whether the insurance company * * * in good faith claimed to have a defense.''

This is exactly what the court instructed. He placed the burden on appellee to prove the company had no valid defense to the insurance contract at the time it refused payment and knew it had no defense.

In the case of Rauen v. Insurance Company, 129 Iowa 725, 740, 106 N. W. 198, 204, this court said:

'' * * * an agreement to release or discharge a liquidated enforceable debt on payment of less than the amount due is not supported by a consideration and will not defeat an action to recover the unpaid remainder. * * * An exception is found to this rule when the creditor's claim is of a doubtful character, or is the subject of a bona fide dispute or controversy, * * *. But this exception is not available to the debtor, where no defense to the claim exists, and the circumstances are such that the debtor securing the compromise must be presumed to know that he is legally liable for the full face of the demand. In other words, if by alleging and claiming a defense which does not exist, or by representations of fact which are not true, the debtor induces his creditor to accept less than is justly due him in satisfaction of the entire debt, the release so secured is of no avail to defend an action by the creditor.''

Appellant next complains that the court erred in giving Instruction No. 10. We quote from the insurance company's brief:

''The court in Instruction No. 10 stated:

'' 'The company in these circumstances is charged with the knowledge of the facts brought to the attention of its agent and therefore as it issued the certificate with knowledge of how the application was filled out and signed, it cannot be heard to complain that through the acts of its own agent it has been misled and deceived.'

"It is, of course, conceded that ordinarily information obtained by an agent in the course of his employment is properly chargeable to the principal. However, it is the contention of the defendant that this rule does not apply when the facts are such as to render it likely that the agent did not communicate such knowledge to his principal."

Appellant cites the case of Hummel v. Bank of Monroe, 75 Iowa 689, 37 N. W. 954, where this court 75 Iowa, at page 691, 37 N. W., at page 955, states:

"The general rule is that the principal is bound by the knowledge of his agent, and that rule is based on the duty of the agent to communicate to the principal his knowledge with reference to the subject of the negotiation, and the presumption that he has performed that duty. Distilled Spirits, 11 Wall. 356. There are exceptions, however, to the rule. * * * And we think another exception, founded on a similar reason, arises when the circumstances are such as to render it certain that the agent did not communicate his knowledge or information to his principal."

We have no fault to find with the rule laid down in the Hummel case, but the facts in the case at bar, do not bring it within the exception cited. The uncontradicted evidence shows that the assured answered all questions truthfully, signed the application without reading it, and the false statements were filled in by the agent. That there was no reason why the agent should not have notified the company. It is claimed that because he received a commission on the sale of the policy from the insurance company that that alone was proof that he did not communicate to his principal the information he had. Every insurance agent receives a commission, and that is not sufficient evidence to bring it within the exception.

It is argued that the court erred in overruling Ground 3 of appellant's motion for a directed verdict, which was as follows:

"That it appears conclusively that an accord and satisfaction was made by and between the plaintiff and the defendant and settlement entered into and that there is no sufficient evi-

dence in the record sufficient to justify the submitting to the jury the question of setting aside said accord and satisfaction.''

An accord and satisfaction is the same as any other contract and requires a meeting of the minds. It is largely a question of what the parties intend to do.

In Frame v. Cassell, 187 Iowa 1194, 1200, 175 N. W. 521, 523, we stated:

''* * * whether there is accord and satisfaction ordinarily involves a pure question of intention, which question is ordinarily a jury question. * * * Whether there was accord and satisfaction being a question of intention, this evidence created a conflict as to the existence of such intention, and so made it a fair question for the jury.''

In Artificial Ice Company v. Reciprocal Exchange, 192 Iowa 1133, 1150, 184 N. W. 756, 764, this court said:

''* * *. the burden was upon appellee to establish such alleged cancellation by agreement or consent of the parties. To effect such an agreement or consent, there must be shown a meeting of the minds of the parties upon the proposition that the policies should be canceled without reference to the terms of the insurance contract. To quote from Marshall, J., in Davis Lbr. Co. v. Hartford F. Ins. Co., supra, 'to effect such cancellation, the minds of the parties must meet, the same as in respect to any other contract.' ''

In the case of Rauen v. Insurance Company, 129 Iowa 725, 743, 106 N. W. 198, 204, this court said:

''* * * From what we have said in the preceding paragraphs of this opinion, it cannot be held as a matter of law that appellee's claim was of a doubtful character; and whether the refusal to pay and the assertion of a defense by which the release was induced were bona fide, or were advanced for the mere purpose of securing an advantageous settlement, was a question of fact for the trial court or jury to determine. * * * Whether a release of debt was fairly obtained is a question of fact which may be raised in any action where such release is made the basis of defense ''

With these rules of law in mind, let us look at the facts in the instant case. Appellee is a widow, who had a first year high school education. She had little business experience, as a clerk in a dry goods store and assisting her husband in a cafe in a small town. The company wrote her a letter stating the application did not contain the correct information and that they were rescinding the contract "and are enclosing remittance in the amount of $21.44 in refund of the premiums which have been paid by Mr. Noble on this contract".

The check which accompanied the letter was payable to appellee as beneficiary and the only other statement on the check was "Rescission of Policies No. C154177 and TP 1S6546 and refund of all premiums paid." Appellant company was dealing with an uneducated widow living in a town of less than two hundred.

Neither the letter nor the check stated it was payment in full of her claims on the policy. She did not show the letter to anyone. She testified that she did not know the company was claiming that was all that was due her on the policy. She was not asked to surrender and turn in the policy. The letter referred to a "rescission" and a "premium return", certainly in view of her limited education and business experience, it was a question of fact for the jury to determine whether there had been an accord and satisfaction, a cancellation and rescission of the policy.

Appellant relies to a great extent upon the case Peterson v. New York Life Insurance Co., 185 Minn. 208, 240 N. W. 659, 80 A. L. R. 180. It is interesting to note that there is a dissenting opinion by the Chief Justice of the Minnesota court, which appeals a great deal more to the writer of the opinion in the case at bar, than the majority opinion. However, in the Peterson case the letter was according to the opinion "clear and easily understandable", and before the check was cashed Peterson consulted his banker. In the case at bar, the letter was not "clear and understandable" and she consulted no one.

The insured held a policy in the Pacific Mutual. Under date of June 18, 1937, appellee made proof of death to that company. A paper properly identified by an official of the

Pacific Mutual as a true photostatic copy of this proof was offered in evidence by appellant as Exhibit 4 (Exhibit "D" to the deposition of the official). Appellee as a witness admitted she signed the exhibit and that all answers but one were in her handwriting. It was shown by the deposition of the company official that the original proof was in the possession of the Pacific Mutual in Los Angeles and that the Company refused to part with it. When the exhibit was offered in evidence, the trial court sustained appellee's objection of incompetent, irrelevant and immaterial, not the best evidence and that the exhibit would only be proper for impeachment of appellee as a witness.

This exhibit contained the following: "When did deceased first complain of, or give other indications of his last illness? A. July, 1936. When did deceased first consult a physician for his last illness? A. July, 1936. In what other companies * * * was the life of deceased insured? A. None." The paper was sworn to by appellee before a notary in the county of her residence. The policy in suit was applied for on August 24, 1936. The letter of rescission written by appellant, which constitutes the basis of its defense of accord and satisfaction, was dated April 21, 1937. This exhibit should have been received as an admission against interest by the appellee in connection with the defense that the insured was not in good health when the policy was issued and, in view of the last answer above quoted, the defense of accord and satisfaction.

It is well settled that secondary evidence of a writing is admissible when the original is outside the jurisdiction and in the possession of one who refuses to part with it. Bullis v. Easton, 96 Iowa 513, 516, 65 N. W. 395; Geddes v. McElroy, 171 Iowa 633, 659, 154 N. W. 320; Speiser v. Phoenix Mutual, 119 Wis. 530, 97 N. W. 207. Indeed, in many states the fact that the original is beyond the jurisdiction is in itself sufficient foundation for the admission of secondary evidence. 20 Am. Jur., page 387, section 435. It is, of course, fundamental that admissions against interest of a party to the suit may be shown. 20 Am. Jur., page 460, section 544; page 495, section 589. It is equally well settled that it is not necessary to lay the foundation for impeachment in order to render such evidence competent. Streblow v. Sylvester, 195 Iowa 168, 170, 191 N. W. 788. The

views set out in this opinion are those of the majority, not including the writer.

It necessarily follows that the trial court erred in not admitting Exhibit 4, and this case must be and it is reversed.— Reversed.

HALE, C. J., and GARFIELD, MILLER, and WENNERSTRUM, JJ., concur.

STIGER, J., concurs in result.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—The majority reverse the judgment of the lower court, upon the one proposition, to wit: the failure to admit in evidence Exhibit 4, setting out certain questions which had been answered by the appellee.

The first two questions refer to her husband's last sickness and when he consulted a physician.

This record shows that the appellee in her pleading alleged that her husband notified the appellant company that he had consulted a doctor several times in July and August of 1936. In addition to this, appellee as a witness in this case testified that her husband had consulted a doctor several times in July and August of 1936, and was not feeling very well.

The exclusion of evidence to prove a fact admitted in my judgment is not prejudicial error. So the only evidence set out in Exhibit 4, which was not before the jury, is the answer to the question whether deceased had insurance in any other company. I fail to see in what respect the failure to mention the other policy in the proof of loss made to the insurance company detracts from appellee's case. Certainly it does not justify a reversal. I would affirm.