WILLIAM LEHMAN, Appellant, v. GREAT WESTERN ACCIDENT ASSOCIATION.

**Accident insurance:** ACCIDENTAL MEANS AND RESULT: PROXIMATE CONNECTION. In a suit upon an accident policy providing indemnity for bodily injury caused solely by external, violent and accidental means, a proximate connection between the accidental means and the injurious result must be shown; it is not sufficient that there be an **accidental** result, but the means must be accidental.

In this case plaintiff strained his side while bowling and as a result experienced a tenderness of the muscles on the right side of the abdomen both front and back. Shortly afterward appendicitis developed caused directly by the affected muscles and parts of the abdomen, which resulted from the strain, and plaintiff was disabled for some time. *Held,* that there was no personal, bodily injury caused solely by external, violent and accidental means, and the verdict for defendant was properly directed.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

FRIDAY, DECEMBER 15, 1911.

ACTION on an accident policy to recover a stipulated benefit for disability resulting from accidental means. At the conclusion of plaintiff's evidence, the court, on defend-

ant's motion, directed a verdict in its favor, and from a judgment on this verdict plaintiff appeals.—*Affirmed.*

*C. R. Jones* for appellant.

*Bailey & Stipp* and *Milchrist & Scott* for appellee.

McCLAIN, J.—The facts which the evidence introduced for plaintiff tended to show were that plaintiff, holding a policy in the defendant company, providing a stipulated indemnity for loss of time resulting from disability due to accidental means, engaged for three successive evenings in the violent exercise involved in the game of bowling or tenpins, and that in the course of the game on the third evening, which was January 20, 1909, he threw a certain ball, and strained his side. He felt the strain at once, but paid no attention to it. Later, as it grew worse, he quit bowling. The next day he had a sore side, and the day following, in the afternoon, he was confined to his bed, and called a physician, who found a tenderness of the muscles of the front and back of the abdomen on the right side. In the opinion of the physician, this tenderness was due to a strain. The muscles were tender and slightly swollen, as could be ascertained by applying the hands to the right side of the abdomen. The physician further testified that on the next day, or the day following, the plaintiff developed a case of appendicitis, which the physician believed could be traced directly to the irregular working of muscles and parts of the body around the abdominal region, which resulted from the strain. The physician further testified that on his first examination he found no indication of appendicitis. An operation became necessary and eventually a second operation, so that plaintiff was disabled from carrying on his occupation of bank cashier for more than four months, for which disability he claimed the sum of $276 under the provisions of his policy.

By the language of the policy, plaintiff was insured "against the effects of personal bodily injury caused solely by external, violent and accidental means," and the important question in this case is whether the disability due to appendicitis was within such provision of the policy. Much ingenuity has been exercised by the courts in attempting to define "accident," but we refrain from entering upon this general field of inquiry, for the reason that the term is of popular significance only, and that it must be defined for various purposes in accordance with somewhat different rules. It may be necessary to determine whether an injury is accidental, for the purpose of excluding liability therefor as the result of negligence; but with this we have now no concern. Our inquiry must be limited to the more concrete question, arising under a policy of accident insurance, as to what is an injury caused solely by external, violent, and accidental means; for the defendant company had the right to limit its liability so as to exclude injuries not of that character.

In this case we have to consider a voluntary act of the insured, not intended nor reasonably calculated to produce an injury of any kind; an unexpected and unintended result, which may, in one sense, be called an accidental result, in the nature of an injury, which was the straining of the muscles on the right side of the abdomen, producing a swelling and an irregular action of such muscles, this injury being slight in its nature and not reasonably calculated to produce disability; and, finally, a diseased condition of the appendix, due to the swelling and irregular action of the strained muscles, resulting in the disability for which plaintiff seeks recovery. In order to properly apply the language of the policy, we must ascertain whether there was an external, violent, and accidental means, the proximate result of which was the attack of appendicitis which caused the disability.

The act of bowling in itself was not an accidental

means, for it was voluntary. The act in itself did not cause the appendicitis. There is no evidence tending to show that, without the intervening accidental result of swollen and strained muscles, causing friction of the appendix by their irregular action, the disability complained of could have resulted. The accidental means, therefore, causing the disability was not the external and violent act of bowling, but the internal condition of swollen and strained muscles. True it is that this condition was discoverable externally by the physician, but likewise many internal conditions of portions of the body resulting in disease may be discovered by the physician through external symptoms.

It would be futile to attempt a discussion of all the cases which might be cited as having some bearing on the solution of the question before us. We think that a reasonable solution may be found in considering a few of our own cases on the subject.

In *Carnes v. Iowa State T. M. Ass'n*, 106 Iowa, 281, we held that death from voluntarily taking an overdose of morphine tablets, the act of taking the medicine being intentional, both as to the thing taken and the amount, was not a death due to external, violent, and accidental means; a distinction being insisted upon between accidental means and accidental result.

In *Feder v. Iowa State T. M. Ass'n*, 107 Iowa, 538, we held that death due to the rupturing of a blood vessel, directly resulting from the voluntary physical effort of closing a window shutter was not death occurring from an accidental cause; the distinction between a voluntary act as the means and an unexpected result being again insisted upon.

In *Delaney v. Modern Accident Club*, 121 Iowa, 528, our holding was that death due to blood poisoning, resulting from an accidental cut on the finger, was a death resulting "solely from accidental injuries;" the rule being

announced that death from disease, which was the natural, though not necessary, consequence of an external, accidental, physical injury, is an accidental death, and not exclusively a death from disease.

In *Binder v. National Masonic Accident Ass'n*, 127 Iowa, 25, a recovery on account of death due to paralysis, resulting from a fall as an accidental cause, but so resulting on account of the diseased condition of decedent's arteries, was denied on account of a stipulation in the policy that there could be no recovery for death happening, directly or indirectly, wholly or in part, accidentally or otherwise, from any disease or bodily or mental infirmity. In that case it was not questioned that, but for the exception in the policy, there might have been a recovery for the death as accidental.

In the recent case of *Jenkins v. Hawkeye Commercial Men's Ass'n*, 147 Iowa, 113, we held that death from blood poisoning, resulting from a wound inflicted in the rectum by a fish bone accidentally swallowed, was a death resulting from an injury "through external, violent and accidental means;" the death being held to be the proximate result of the wound, which was accidental.

In all of these cases we have recognized the necessity of proximate connection between some accidental means and the injurious result complained of; and according to the great weight of authority such proximate connection must appear. It is not sufficient that there be an accidental —that is, an unusual and unanticipated—result. The means must be accidental; that is, involuntary and unintended. Thus in *United States Mutual Acc. Ass'n v. Barry*, 131 U. S. 100, it was held that, "if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs, which produces the injury, then the

injury has resulted through accidental means;" and the court sustained a recovery in that case for an injury following the voluntary jumping from a platform, on the ground that the evidence tended to show some unforeseen or involuntary movement, turn, or strain of the body, or some unforeseen circumstance causing the injured person to alight in a different position or way from that which he intended or expected. And this case is followed under quite similar circumstances and reasoning in *Standard L. & Acc. Ins. Co. v. Schmaltz*, 66 Ark. 588 (53 S. W. 49, 74 Am. St. Rep. 112), in which our case of *Feder v. Iowa State T. M. Ass'n, supra,* was distinguished, on the ground that no unusual or unexpected exertion there appeared.

In *Shanberg v. Fidelity & Casualty Co.,* 158 Fed. 1 (85 C. C. A. 343, 19 L. R. A. (N. S.) 1206), it was held that disability or death following a rupture of the heart, due to voluntary physical exertion, was not the result of accidental means.

In *Appel v. Aetna L. Ins. Co.,* 86 App. Div. 83 (83 N. Y. Supp. 238), affirmed by memorandum in 180 N. Y. 514 (72 N. E. 1139), peritonitis, resulting from the riding of a bicycle, was held not to have been due to accidental means, inasmuch as the injured person did nothing which he did not fully intend to do, and what he did was done precisely as he intended.

In *Niskern v. United Brotherhood,* 93 App. Div. 364 (87 N. Y. Supp. 640), the same distinction is made as in the preceding cases between an accidental means and an accidental result, following *Southard v. Railway Passenger's Assurance Co.,* 34 Conn. 574 (Fed. Cas. No. 13,182), in which it was held that intentionally jumping from a railroad car and running a considerable distance, not under any emergency requiring extraordinary efforts for personal safety, was not an accidental means which

would render the insurance company liable for the accidental result of a rupture, which caused disability.

In *Cobb v. Preferred Mutual Acc. Ass'n*, 96 Ga. 818 (22 S. E. 976), disability, due to intentional exertion on the part of one who was in a feeble condition, was held not the result of accidental means.

Quite in point in its peculiar facts is *Streeter v. Western Union Mutual L. & Acc. Society*, 65 Mich. 199 (31 N. W. 779, 8 Am. St. Rep. 882) in which case it was held that, although a physical injury produced insanity, and the injured person in this condition committed suicide, the suicide could not be attributed to the physical injury; and the death of the insane person was therefore a death by suicide, and not by accident.

An examination of a few cases out of the many which might be referred to as apparently supporting a different conclusion from that which we have reached will make more clear the distinction upon which we are insisting.

In *North American L. & Acc. Ins. Co. v. Burroughs*, 69 Pa. 43 (8 Am. Rep. 212) language was used by the court indicating that an accidental strain of the muscles, resulting in death, would render the company liable for such death; but the policy seems to have contained no such limitation as is found in the present case, requiring the injury to be the result of accidental means. The court simply held in that case that the injury—that is, the result —was accidental.

In *Gale v. Mutual Aid & Acc. Ass'n*, 66 Hun, 600 (21 N. Y. Supp. 893), the question was also whether the injury, not the means, was accidental and visible.

In *Patterson v. Ocean Acc. & Guarantee Co.*, 25 App. Cas. (D. C.) 46, the question again was whether the death of the assured was the proximate result of an accidental injury.

In *Atlanta Acc. Ass'n v. Alexander*, 104 Ga. 709 (30 S. E. 939, 42 L. R. A. 188), the court reached the con-

clusion that, taking all the facts together, the jury could properly infer that the act which preceded the injury was something unforeseen, unexpected, and unusual, and therefore that the injury resulted from such an act, and was therefore produced by external, violent and accidental means, although the act itself was voluntary.

In *Thayer v. Standard Life & Acc. Ins. Co.*, 68 N. H. 577 (41 Atl. 182), the question was whether the injury was visible, although it consisted of an internal strain.

In *Freeman v. Mercantile Mutual Acc. Ass'n*, 156 Mass. 351 (30 N. E. 1013, 17 L. R. A. 753), the death for which recovery was asked under an accident policy resulted from peritonitis, but this immediate cause of death was traced directly to a fall, and the court held that the death was due to accident, and not disease.

In *Isitt v. Railway Passengers' Assurance Co.*, L. R. 22 Q. B. D. 504, there was the fact of an accidental fall, the immediate consequence of which was a cold, finally resulting in pneumonia, which caused death, and the court held that the death was the effect of "injury caused by accident;" the question being only as to the proximate connection between the accidental fall and the death.

We have not attempted to discuss all the cases cited by counsel, for on examination of those relied upon for appellant we find many of them distinguishable for reasons similar to those referred to in the cases which we have discussed. On a subject of such complexity, it is easy to quote the language used by courts in support of conclusions which those courts would not have reached under facts analogous to the facts in the case before us.

Finally, it is to be borne in mind that in this case there is no evidence whatever of any slipping or falling, or of any straining of the muscles, other than the intentional strain put upon them in the voluntary and intentional act of bowling. Such a strain was not an accidental strain, and, if it produced an unintentional result and

consequent injury, nevertheless the resulting injury, and not the means producing it, was accidental.

The judgment of the trial court is therefore *affirmed.*