## MOUTZOUKOS v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.

No. 4492.   Decided April 4, 1927.   (254 P. 1005.)

*H. L. Mulliner,* of Salt Lake City, for appellant.

*D. B. Hempstead,* of Salt Lake City, for respondent.

THURMAN, C. J.

This is an action by the plaintiff to recover judgment upon an accident insurance policy issued by the defendant for injuries alleged to have been sustained by the plaintiff

on June 30, 1925. The complaint alleges that the policy was issued to him June 15, 1925, upon payment to the defendant of the sum of $20, and that the policy so issued indemnified him at the rate of $80 per month until October 1, 1925, against total loss of time resulting from bodily injuries sustained through purely accidental means; that thereafter, on September 9, 1925, plaintiff paid to defendant the further sum of $15 as payment in advance to carry said policy to December 31, 1925, making a total sum of $35 paid for said policy by plaintiff to defendant. It is then alleged that, after the issuance of said policy, and while it was in force, to wit, on the 30th day of June, 1925, plaintiff suffered bodily injuries, sustained through purely accidental means, which wholly and continuously disabled the plaintiff, and prevented him from performing any and every duty pertaining to his occupation, and the plaintiff thereby suffered total loss of time from said June 30, 1925, to October 8th of the same year—a period of 3 months and 8 days; that said injuries were caused by plaintiff rupturing himself while attempting to unload a mining timber too heavy for one man to handle; that, by reason of said injury, plaintiff was, for a period of 3 months and 8 days, disabled and prevented from performing any and every duty pertaining to his occupation, which was loading and unloading timbers inside and outside the mine, which occupation of plaintiff is stated in the policy.

The complaint further alleges that the policy also provided for reimbursement for hospital expenses, if plaintiff was necessarily confined therein, in the sum of not exceeding $40 per month for a period of not exceeding three months, and alleges that, on the 19th day of July, 1925, he was sent to the hospital by his attending physician, and on July 20th he was operated upon for rupture, and was necessarily confined in said hospital, solely on account of said injuries, from July 19, 1925, until August 7th of the same year; that by reason thereof he is entitled to compensation for said time in the sum of $26.66.

It is further alleged that plaintiff's physical condition necessitated total disability, and during the time he was confined within doors he required regular visits by a legally qualified physician; that immediately after the happening of said accident plaintiff notified the defendant thereof, and thereafter within the time provided by the policy, he filed with, and delivered to, defendant written notice of the injury, and claim and proof of loss, and requested indemnity for accident disability and illness beginning June 30, 1925; that plaintiff has at all times faithfully kept and performed every condition of said policy by him to be kept and performed, and has been guilty of no default; that more than 60 days have elapsed since plaintiff filed with and delivered to defendant his proof of loss and claim in writing upon a form furnished him by defendant; that plaintiff, on numerous occasions since said loss was suffered and said proof of loss and claim in writing were filed and delivered, made demand upon defendant for the performance of the conditions of said policy to be performed by defendant, and has demanded of defendant that it pay plaintiff the sum of $261.32, being the amount due plaintiff at the rate of $80 per month for 3 months and 8 days, and the further sum of $26.66 for additional compensation while plaintiff was confined in the hospital; that defendant refused, and still refuses, to pay said amounts or any amounts whatever to the plaintiff; and that the said amounts are now due and owing from the defendant to the plaintiff. Plaintiff prays judgment for the sums above stated. We have omitted allegations in the complaint relating to illness from disease, for the reason that such issue was withheld from the jury.

The defendant demurred to the complaint. The demurrer was overruled.

Answering the complaint, defendant admits the issuance of the policy and payment of $35 premium. It also admits receipt of notice, proof of, and claim for, indemnity, more than 60 days prior to the commencement of the action. Defendant denies specifically each and every allegation of the

complaint tending to fix liability upon the defendant, and, as a further answer and defense, alleges that plaintiff was afflicted with a double hernia long prior to the alleged accident of which he complains, and at the time thereof, and that in his application for the policy, he knowingly made false answers to questions propounded, to the effect that he had never had hernia, and had not received medical advice or treatment for any local or constitutional disease within the past 5 years. Defendant alleges that, if plaintiff has suffered loss of time, it has been due to hernia which he had at the time of making application for said policy. Defendant prays that the action be dismissed, at plaintiff's cost.

The testimony of plaintiff tended to show that, while lifting a heavy mining timber in the course of his employment for the Utah Apex Mining Company on June 30, 1925, he sustained a rupture, which necessitated an operation on July 19, 1925, and confinement in the hospital under medical treatment as alleged in his complaint. There was evidence on the part of the defendant to the effect that no such injury occurred. The case was tried to a jury, verdict was rendered for plaintiff, and judgment entered. Defendant appeals.

The policy in question insured respondent "agaist loss of limb, sight, or time, resulting directly and independently of all other causes, from bodily injuries sustained through purely accidental means." Appellant makes the contention that, where a man simply injures himself in the regular course of his work by voluntarily lifting, especially where he is lifting a timber of the same character as he is handling one after the other, without anything unforeseen happening to cause the injury, it does not come within the terms of the policy. In other words, the contention is that it is not an injury sustained "through purely accidental means."

This question has heretofore been before the court in one form or another, and has been decided adversely to appellant's contention. Two of the cases we have in mind were

cases under the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165) *Tintic Milling Co.* v. *Ind. Comm.*, 60 Utah, 261, 207 P. 1114; *Cherdron Const. Co.* v. *Simpkins*, 61 Utah, 493, 214 P. 593. In each of these cases the court had occasion to carefully consider what constituted "accidental injury," as the term is used in the Industrial Act. The conclusion arrived at was that, to constitute an accidental injury it must happen suddenly and unexpectedly, at a definite time and place. It is said in appellant's brief that "there is a clear line of demarcation between cases arising on an insurance policy of this kind and those arising under workmen's compensation acts." We do not so understand the law, as far as the definition of an accidental injury is concerned. But the court has likewise had under review cases arising under accident policies containing similar provisions to that above quoted from the policy in question here. *Richards* v. *Standard Acc. Ins. Co.*, 58 Utah, 622, 200 P. 1017, 17 A. L. R. 1183. In that case the insured was killed by sunstroke while crossing a desert. The insurance company made a similar contention to that made by the appellant here. It appeared that there were two lines of authority upon the question, one holding as contended by appellant in the case at bar, to the effect that there was a difference between an "accidental death" and a death "by accidental means," and the other announcing a more liberal construction in favor of the insured. In other words, it was held, in effect, that any sudden, unexpected death, not resulting from disease, is a death by accidental means within the meaning of the policy, and that sunstroke was not a disease.

In *Carter* v. *Standard Acc. Co.*, 65 Utah 465, 238 P. 259, 41 A. L. R. 1495, there is a more extended review of the question and a vast number of cases collated from both lines of authority. The Carter Case was also an accident insurance case. The defendant in that case affirmatively alleged that Carter, the insured, committed suicide by intentionally taking an overdose of laudanum. There was evidence tending to show that Carter was in the habit of tak-

ing laudanum to induce sleep; that he new just how much to take, and, therefore, if he took a lethal dose, it must have been with suicidal intent. The plaintiff contended that, if his death was caused by an overdose of laudanum, it was not intended, and therefore it was a death by accidental means. The question of what constitutes a death by accidental means, within the meaning of the policy, was thus raised, and the authorities pro and con were presented to the court. In deciding the case this court adopted, as it did in the Richards Case, the more liberal construction in favor of the insured. It was there held that to hold otherwise would be to apply the rule of strictissimi juris against the insured, which is contrary to the overwhelming weight of judicial opinion. It is not necessary to quote from the foregoing cases. The rule therein enunciated, whether in industrial cases or accident policy cases, is well sustained in other jurisdictions as well as our own, as will be seen by examining the authorities cited in the cases referred to.

Before concluding our review of this question, as illustrating the contention of each of the parties, we quote two excerpts from authorities cited in the briefs. Appellant quotes the following from the note to *Lewis* v. *Ocean Acc. & Guar. Co.* (224 N. Y. 18, 120 N. E. 56), as reported in 7, A. L. R. at page 1131:

"It is generally held that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen, except the death or injury."

This appears to be supported by numerous authorities cited in the note. Authorities to the contrary are also cited.

Respondent's contention is illustrated by the following quotation from *Young* v. *Railway Mail Ass'n,* 126 Mo. App. 341, 103 S. W. at page 562:

"Accident assurance companies do business mostly with the common people, and the term 'accident,' as used in these policies, should be construed most strongly against the companies, and be defined accord-

ing to the ordinary and usual understanding of its signification. 'Any unusual and unexpected event attending the performance of a usual and necessary act,' whether the act be performed by the party injured or by another, is ordinarily and usually understood to be an event which happened by accident. In the foregoing cases it seems to us a too strict and illiberal definition of the term was adhered to. At any rate, they are not reconcilable with the general trend of the best considered American cases, which hold that accidental means are those which produce effects which are not the natural and probable consequence of the act. 'An effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of such means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' "

This court in the Richards and Carter Cases, supra, followed the rule announced in the passage last quoted, and we know of no reason why the rule should be departed from in the instant case. We are of opinion that whatever injury, if any, the plaintiff received while lifting the timber in question, was an injury sustained through accidental means.

It is also contended by appellant that the court erred in sustaining objections to questions propounded by defendant to the witness Dr. Clark Young. To understand the merits of this question, it is pertinent to first refer to the issues raised by the answer of defendant. The defendant denied that plaintiff sustained the injury complained of through purely accidental means, and affirmatively alleged that, at the time of his application for the policy in question, and at the time of the alleged accident, he was afflicted with hernia, and that that was the sole cause of any illness he may have had. The plaintiff, as a witness in his own behalf, at the trial testified as to his previous employment by other companies and to his having been passed by the company physicians as being physically fit for work. He was then questioned as to his employment by the Apex Mining Company of Bingham, in which employment the alleged accident occurred, whereupon the following questions in chief were asked and answered:

"Q. Were you examined by the mining company's physician prior to the time you went to work for the Apex Mining Company on February 5, 1925? A. Yes, sir.

"Q. As to your physical condition? A. Yes, sir.

"Q. What was the name of the doctor who examined you on February 4 or 5, 1925? A. Dr. Young.

"Q. Dr. Young. What was his first name? A. Clark.

"Q. Dr. Clark Young? A. Yes.

"Q. Was he the physician for the Apex Mining Company in February, 1925? A. Yes, sir.

"Q. What was the result of his examination of you? A. He examined me, and gave me a card, and I went to work.

"Q. Do you mean by that that Dr. Young passed you as physically fit to go to work at the Apex mine? A. Yes, sir.

"Q. And you worked there until you were injured on June 30, 1925? A. Yes, sir."

Dr. Young was afterwards sworn as a witness for defendant, and with reference to his examination of plaintiff as to his physical fitness for work the following questions were asked and answered:

"Q. Did you examine him about the 5th of February, 1925? A. Yes.

"Q. What was the occasion for that examination? A. He was beginning work in the Apex mine, and every man who starts work must have an examination.

"Q. Is that a regulation of the company? A. Yes, sir.

"Q. Were you with the other doctors that you were connected with at Bingham Hospital making these examinations at that time? A. Yes, sir.

"Q. In making the examination of him, did you go over his lower abdomen? A. Yes, sir.

"Q. I wish you would state, Doctor, what you found from that examination at that time of his condition in that region.

"Mr. Hempstead: I object to that as incompetent, immaterial, irrelevant, and a privileged communication, and barred under the provisions of subdivision 3 of section 7124, Compiled Laws of Utah 1917.

"The Court: The objection is sustained."

The statute (section 7124, subd. 4), which respondent intended to cite instead of sub-division 3, reads as follows:

"A physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in at-

tending the patient which was necessary to enable him to prescribe or act for the patient."

Appellant, among other things, contends that the relation of physician and patient was not shown to exist between Dr. Young and the plaintiff at the time he was passed by Dr. Young as physically fit for work, and therefore the plaintiff could not claim the privilege of the statute. The evidence without dispute shows that Dr. Young was employed by the Apex Company in the particular instance to pass upon the plaintiff's physical fitness for work. He was not employed to treat the plaintiff or to examine him for the purpose of treatment. The question therefore is, Does the statute relied on by respondent apply? Numerous authorities are referred to by appellant in support of its contention, some of which are strikingly in point. In *Cherpeski* v. *Great Northern Ry. Co.*, 128 Minn. 360, 150 N. W. 1091, the third headnote states the rule as follows:

"The testimony of physicians making an examination of the plaintiff to ascertain his physical ability to work on a railroad, their information not being obtained for the purpose of treating or acting for him, is not privileged, and it was error to exclude it."

The language quoted reflects the opinion of the court. The Minnesota statute is substantially the same as ours.

In Lynch v. Germania Life Ins. Co., 132 App. Div. 571, 116 N. Y. S. 998, it was held that—

"Information obtained by an examining physician to enable a life insurance company to determine whether the person examined is a proper risk is not 'privileged' by Code Civ. Proc. § 834."

To the same effect see *People* v. *Austin*, 199 N. Y. 446, 93 N. E. 57; *McGinty* v. *Brotherhood of Ry. Trainmen*, 166 Wis. 83, 164 N. W. 249; 40 Cyc. 2382.

Many other cases could be cited to the same effect, but those referred to sufficiently illustrate the rule.

In answer to this particular contention of appellant, respondent cites the case of *Munz* v. *Salt Lake City R. R.,* 25 Utah, 220, 70 P. 852. That case is not in point. The patient in that case was actually treated by the company's physician and was sent to the physician for that purpose. It seems clear from the very words of the statute, without reference to adjudicated cases, that the relation of physician and patient did not exist between Dr. Young and the plaintiff, and therefore the court erred in sustaining plaintiff's objection to the question. Furthermore, in view of the issues raised by the pleadings, the error was manifestly prejudicial.

But, assuming that the relation of physician and patient did exist, we are still of opinion the court erred in sustaining the objection. As we have shown, plaintiff in his examination in chief testified that Dr. Young passed him as physically fit for the work, gave him a card, and sent him to work. Not satisfied with that answer, the further question was propounded to plaintiff on direct:

"Q. Do you mean by that that Dr. Young passed you as physically fit to go to work at the Apex? A. Yes, sir.

"Q. And you worked there until you were injured on June 30, 1925? A. Yes, sir."

In making these answers the plaintiff made use of the opinion of Dr. Young as to his physical condition, his ailments, if any, and left the impression, no doubt, upon the jury that plaintiff was physically sound and healthy. Plaintiff thereby acquired an advantage to which he was not entitled, if he intended to claim the privilege of the statute. Under the authority of the Dahlquist Case, cited by both respondent and appellant, reported in 52 Utah, 438, 174 P. 833, we are of opinion the respondent waived the privilege of the statute. In that case the question under review was the same as here. Four separate opinions were filed, discussing the question in some respects from different angles. On petition for rehearing it was contended that the several opinions were in conflict, and therefore no decision. In

answer to this contention the three justices constituting the majority joined in an opinion which made the grounds of their decision unmistakably clear. At pages 474, 475, 52 Utah (174 P. 846), the majority opinion, referring to the question of conflict among the majority opinions, uses the following language:

"If there are shades of difference in the reasons assigned for the reversal of the judgment in the opinions heretofore handed down, it is sufficient to say, as before stated, we all agree that where a party voluntarily, in a trial of his own cause, states what his physician did and said respecting the injuries which are the subject of litigation, he should not be permitted to close the mouth of the physician when offered as a witness by his adversary solely on the ground of privilege. That is the question here involved, and the only question intended to be determined by the majority of the court."

The analogy between that case and the case at bar is complete. Here the plaintiff voluntarily stated, in effect, what the physician said upon a point going to the very root of the issues between the parties. In such case the physician whose conclusions and opinions were exploited by the plaintiff, for an obvious advantage, should be permitted to state what he found upon the examination to which the plaintiff referred. The rejection of the evidence was prejudicial error.

Many other questions of a similar nature were propounded to Dr. Young by defendant's counsel, and objections thereto sustained. In view of what has been said, it is not necessary to consider these questions in detail. It is sufficient to say that, in view of the fact that the relation of physician and patient did not exist, within the meaning of the privilege statute, between Dr. Young and the plaintiff, the doctor should have been permitted to answer any competent, relevant and material question as to what he found when he examined plaintiff as to his physical fitness for work.

The deposition of Dr. Paul S. Richards, who was ill during the trial, was taken under stipulation and offered as evidence for defendant. He was the attending physician upon plaintiff, and operated upon plaintiff for his injury

in the Bingham hospital in July, 1925. Eighty-seven interrogatories were presented in the deposition, and twenty-five or more objections were made, on the grounds of privilege, and sustained over defendant's objection. The relation of physician and patient was clearly established, and the questions objected to generally related to what the doctor found in his examination of the plaintiff while under his care. We have been unable to find any substantial error in the rulings of the court in sustaining respondent's objections. Some of the objections were exceedingly hypercritical, and were close to the border line, but as to such objections I have been unable to find prejudicial error in the rulings of the court.

It is also contended by appellant that the plaintiff waived the privilege of the statute once for all by signing an affidavit called "affidavit of claimant as to illness," in which he was asked the question, "Do you agree that any physician who has ever treated you may give information within his knowledge as to your past or present physical condition." To this question the witness answered "Yes." It also appears from the exhibit that it was signed by plaintiff September 28, 1925, as part of his affidavit of claim of illness. It was nearly 3 months after the alleged accident, and is no part of the contract for insurance. If there was any consideration for such agreement, it nowhere appears in the record. The plaintiff's willingness to allow any physician that had ever treated him to give information within his knowledge as to plaintiff's past or present physical condition should not be construed as a consent that said physicians might testify to such information against the plaintiff in an action to recover on the policy. Such an interpretation of the language used would violate the rule that doubtful provisions should be construed in favor of the insured. If express consent had been given in the contract of insurance in definite and indubitable terms that plaintiff's physcians might testify to such information, there would be more grounds for appellant's contention and some

authority to support it. *Foley* v. *Royal Arcanum*, 151 N. Y. 196, 45 N. E. 456, 56 Am. St. Rep. 621, was an action to recover on a life insurance policy. The defense was misrepresentation as to physical condition and breach of warranty. The representations complained of were statements by insured that he did not have certain diseases. It was proved that he was affected with, and did die from, disease from which he had represented himself to be free. His application, which was to constitute a part of the contract of insurance, contained the following:

"I hereby expressly waive any and all provisions of law now existing or that may hereafter exist preventing any physician from disclosing any information acquired in attending me in a professional capacity or otherwise, or rendering him incompetent as a witness in any way whatever, and I hereby consent and request that any such physician testify concerning my health and physical condition, past, present or future."

It was held that the language constituted a waiver of the right of the insured to claim privilege.

Plaintiff's answer to the question in the instant case was not a waiver of the privilege.

There are other errors assigned and argued, but they are of such nature that it is not likely they will occur again in a new trial of the case.

The judgment is reversed and the cause remanded for a new trial, at respondent's cost.

CHERRY, STRAUP, and HANSEN, JJ., and CHRISTENSEN, District Judge, concur.

FRICK, J., did not participate herein.